# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| HERITAGE IP LLC,<br><br>    Plaintiff,<br><br>v.<br><br>INSULET CORPORATION,<br><br>    Defendant. | Case No. _____<br><br>**COMPLAINT FOR PATENT INFRINGEMENT**<br><br>**JURY TRIAL DEMANDED** |

## COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff Heritage IP LLC ("Heritage" or "Plaintiff") hereby asserts the following claims for patent infringement against Defendant Insulet Corporation ("Insulet" or "Defendant"), and alleges as follows:

## SUMMARY

1. Heritage owns United States Patent Nos. 6,854,067 and 7,221,200 ("Asserted Patents").

2. Defendant infringes the Asserted Patents by implementing, without authorization, Heritage's proprietary technologies in a number of its products including, *inter alia*, the Omnipod Dash Pod system ("Accused Product").

3. By this action, Heritage seeks to obtain compensation for the harm it has suffered as a result of Defendants' infringement of the Asserted Patents.

## NATURE OF THE ACTION

4. This is a civil action for patent infringement arising under the patent laws of the United States, 35 U.S.C. § 1 *et seq.*

5. Defendant has infringed and continues to infringe, and at least as early as the filing and/or service of this Complaint, has induced and continues to induce infringement of, and has contributed to and continues to contribute to infringement of, at least one or more claims of Heritage's Asserted Patents at least by making, using, selling, and/or offering to sell its products and services in the United States, including in this District.

6. Heritage is the legal owner by assignment of the Asserted Patents, which were duly and legally issued by the United States Patent and Trademark Office ("USPTO"). Heritage seeks monetary damages for Defendant's infringement of the Asserted Patents.

## THE PARTIES

7. Plaintiff Heritage IP LLC is a Texas limited liability company with its principal place of business at 10900 Research Blvd, Ste 160C PMB 1042, Austin, TX 78759. Heritage is the owner of intellectual property rights at issue in this action.

8. On information and belief, Defendant Insulet Corporation is a corporation organized under the laws of Delaware, with its principal place of business at 100 Nagog Park, Acton, Massachusetts 01720. Insulet may be served via its registered agent, Corporation Service Company, 251 Little Falls Drive, Wilmington, DE, 19808.

9. On information and belief, Defendant directly and/or indirectly develops, designs, manufactures, distributes, markets, offers to sell and/or sells infringing products and services in the United States, including in the District of Delaware, and otherwise directs infringing activities to this District in connection with its products and services.

## JURISDICTION AND VENUE

10. As this is a civil action for patent infringement arising under the patent laws of the United States, 35 U.S.C. § 1 *et seq*., this Court has subject matter jurisdiction over the matters asserted herein under 28 U.S.C. §§ 1331 and 1338(a).

11. This Court has personal jurisdiction over Defendant, in part because Defendant does continuous and systematic business in this District, including by providing infringing products and services to the residents of the District of Delaware that Defendant knew would be used within this District, and by soliciting business from the residents of the District of Delaware. For example, Defendant is subject to personal jurisdiction in this Court because, *inter alia*, and on information and belief, Defendant is a Delaware corporation, and directly and through agents regularly does, solicits, and transacts business in the District of Delaware.

12. In particular, Defendant has committed and continues to commit acts of infringement in violation of 35 U.S.C. § 271, and has made, used, marketed, distributed, offered for sale, sold, and/or imported infringing products in the State of Delaware, and engaged in infringing conduct within and directed at or from this District. For example, Defendant has purposefully and voluntarily placed the Accused Products into the stream of commerce with the expectation that the Accused Products will be used in this District. The Accused Products have been and continue to be distributed to and used in this District. Defendant's acts cause and have caused injury to Heritage, including within this District.

13. Venue is proper in this District under the provisions of 28 U.S.C. § 1400(b) at least because Defendants have committed acts of infringement in this District and has a regular and established place of business in this District and is a Delaware corporation.

## THE '067 PATENT

14. U.S. Patent No. 6,854,067 ("the '067 Patent") is entitled "Method and System for Interaction Between a Processor and a Power on Reset circuit to Dynamically Control Power States in a Microcontroller," and was issued on February 8, 2005. A true and correct copy of the '067 Patent is attached as Exhibit A.

15. The '067 Patent was filed on June 22, 2001 as U.S. Patent Application No. 09/887,923.

16. Heritage is the owner of all rights, title, and interest in and to the '067 Patent, with the full and exclusive right to bring suit to enforce the '067 Patent, including the right to recover for past infringement.

17. The '067 Patent is valid and enforceable under United States Patent Laws.

18. The '067 Patent recognized several problems with existing microcontrollers having Power on Reset (POR) circuits. Specifically, the prior art was "problematic because it either fails to address microcontroller power stability issues beyond initial boot-up POR, requires the dedication of existing system resources to address them, or requires the provision of additional resources to address them." Exhibit A at 1:63-67.

19. For instance, the '067 Patent recognized that "[d]edicating existing resources, internal to the microcontroller, to sense, analyze, and react to post-booting power instability removes circuitry from other possible applications." *Id.* at 2:4-7. "Further, these effectively internal control functions demand the expenditure of power, heat dissipation, logic, memory, and other System infrastructure and energy." *Id.* at 2:7-9. "These finite System resources then become unavailable for executing the design external control functions of the microcontroller. Thus, microcontroller performance can Suffer." *Id.* at 2:10-12.

20.     The '067 Patent also recognized problems with providing additional resources (e.g. adding them into the microcontroller) made the microcontroller more expensive to manufacture and operate, "in terms of also demanding the additional expenditures of power, heat dissipation, logic, memory, and other System infrastructure and energy to meet an effectively internal control function, especially to achieve power control automatically." *Id.* at 2:13-22.

21.     To address one or more shortcomings of these existing microcontrollers, the '067 Patent discloses, *inter alia*, a "method and system which effectively functions to provide dynamic power control capabilities for a microcontroller." The '067 Patent further discloses a method and system that retains the inherent advantages of existing POR and processor technology to accomplish the foregoing requirements with no extra demand on system resources or requirement for additional System resources. *Id.* at 2:52-63.

## **THE '200 PATENT**

22.     U.S. Patent No. 7,221,200 ("the '200 Patent") is entitled "Programmable Low Voltage Reset Apparatus for Multi-VDD Chips," and was issued on May 22, 2007. A true and correct copy of the '200 Patent is attached as Exhibit B.

23.     The '200 Patent was filed on March 8, 2005 as U.S. Patent Application No. 11/075,632.

24.     Heritage is the owner of all rights, title, and interest in and to the '200 Patent, with the full and exclusive right to bring suit to enforce the '200 Patent, including the right to recover for past infringement.

25.     The '200 Patent is valid and enforceable under United States Patent Laws.

26.     The '200 Patent recognized several problems with existing low voltage reset schemes for microcontrollers. Exhibit B at 1:17-27. Specifically, in the prior art solution, "the

low voltage inhibit reset signal generation circuit cannot support devices having multiple power supply levels (multiple VDDs)." *Id.* at 1:46-48. For instance, "[w]hen there are multiple Vdds on a chip, a reset circuit needs to be activated when one or more of the Vdds is lost." *Id.* at 1:48-51

27. To address one or more shortcomings of these existing microcontrollers, the '200 Patent discloses, *inter alia*, a "low voltage reset apparatus for a device having a plurality of power supplies. *Id.* at 1:62-65.

## COUNT I: INFRINGEMENT OF U.S. PATENT NO. 6,854,067

28. Heritage incorporates by reference and re-alleges paragraphs 1-27 of this Complaint as if fully set forth herein.

29. Defendants have infringed and is infringing, either literally or under the doctrine of equivalents, the '067 Patent in violation of 35 U.S.C. § 271 *et seq.*, directly and/or indirectly, by making, using, offering for sale, or selling in the United States, and/or importing into the United States without authority or license, the Omnipod Dash Pod ("Accused Product")

30. As just one non-limiting example, set forth below (with claim language in bold and italics) is exemplary evidence of infringement of Claim 1 of the '067 Patent in connection with the Accused Products. This description is based on publicly available information. Heritage reserves the right to modify this description, including, for example, on the basis of information about the Accused Products that it obtains during discovery.

*1(a): In a microcontroller with an embedded processor, a switched mode pump power supply and power on reset circuit, a method of dynamically controlling a plurality of power stability functions for said microcontroller, said method comprising:* Defendant makes, uses, sells, and/or offers to sell a device or system that practices the method in accordance with Claim

1.

For instance, the Accused Product includes a microcontroller (e.g., Arm Cortex-M4F based microcontroller) with an embedded processor (e.g., ARM Cortex M4F core processor), a switched mode pump power supply (e.g., buck converter supply) and power on reset circuit. The Accused Product practices a method of dynamically controlling a plurality of power stability functions for said microcontroller (e.g., Arm Cortex-M4F based microcontroller). *See* Exhibit A-1, Figs. 1-10.

*1(b): Supplying a power state to said microcontroller from said switched mode pump power supply, wherein said processor and said power on reset circuit are interconnectedly coupled, and wherein said switched mode pump power supply is interconnectedly coupled with said power on reset circuit and responsive to signals therefrom;*—Defendant makes, uses, sells, and/or offers to sell a device or system that supplies a power state to the microcontroller from the power supply, wherein the processor and power on reset circuit are interconnectedly coupled and the power supply is interconnectedly coupled with the power on reset circuit.

For instance, the Accused Product practices supplying a power state (e.g., a power state corresponding to a buck converted voltage) to said microcontroller (e.g., Arm Cortex-M4F based microcontroller) from said switched mode pump power supply (e.g., buck converter), wherein said processor (e.g., ARM Cortex M4F core processor) and said power on reset circuit are interconnectedly coupled, and wherein said switched mode pump power supply (e.g., buck converter) is interconnectedly coupled with said power on reset circuit  (e.g., connected through Ret. LDO) and responsive to signals therefrom (e.g., voltage level). *See* Exhibit A-1, Figs. 11-16.

*1(c): sensing a power state condition of said power state;*—Defendant makes, uses, sells, and/or offers to sell a device or system that sense a power state condition of the power state.

For instance, the Accused Products practices sensing a power state condition (e.g., power state corresponding to a voltage level) of said power state (e.g., power state corresponding to a buck converted voltage). *See* Exhibit A-1, Fig. 17-19

*1(d): determining a suitability status of said power state condition;*—Defendant makes, uses, sells, and/or offers to sell a device or system that determines a suitability status of the power state condition.

For instance, the Accused Products compare with threshold voltage of the power state condition (e.g., power state corresponding to a voltage level). *See* Exhibit A-1, Fig. 20-22.

*1(e): communicating said suitability status between said power on reset circuit and said processor;*—Defendant makes, uses, sells, and/or offers to sell a device or system that communicates suitability status between the power on reset circuit and said processor.

For instance, as noted above, the Accused Products practice communicating (e.g., generation Power On Reset signal) said suitability status (e.g., comparison output with threshold voltage) between said power on reset circuit and said processor (e.g., ARM Cortex core processor). *See* Exhibit A-1, Fig. 23-25

*1(f): controlling certain functions of said microcontroller accordingly.*—Defendant makes, uses, sells, and/or offers to sell a device or system that controls certain functions of the microcontroller accordingly.

For instance, the Accused Products practices controlling certain functions of said microcontroller accordingly (e.g., POR signal resets specific registers of the controller of QN9080 which controls various functions). *See* Exhibit A-1, Fig. 26-28.

31. Additionally, Defendant has been and/or currently is an active inducer of infringement of the '067 Patent under 35 U.S.C. § 271(b) and contributory infringer of the '067

Patent under 35 U.S.C. § 271(c).

32. At least as early as of the date of the filing of the Complaint, Defendants have had actual knowledge of the '067 Patent.

33. Defendants have provided the Accused Products to its customers and, on information and belief, instructions to use the Accused Products in an infringing manner while being on notice of (or willfully blind to) the '067 Patent and Defendants' infringement. Therefore, on information and belief, Defendants knew or should have known of the '067 Patent and of its own infringing acts, or deliberately took steps to avoid learning of those facts.

34. Defendant knowingly and intentionally encourages and aids at least its end-user customers to directly infringe the '067 Patent.

35. Defendant's end-user customers directly infringe at least one or more claims of the '067 Patent by using the Accused Products in their intended manner to infringe. Defendant induces such infringement by providing the Accused Products and instructions to enable and facilitate infringement, knowing of, or being willfully blind to the existence of, the '067 Patent. On information and belief, Defendant specifically intends that its actions will result in infringement of one or more claims of the '067 Patent, or subjectively believe that their actions will result in infringement of the '067 Patent, but took deliberate actions to avoid learning of those facts, as set forth above.

36. Additionally, Defendant contributorily infringes at least one or more claims of the '067 Patent by providing the Accused Products and/or software components thereof, that embody a material part of the claimed inventions of the '067 Patent, that are known by Defendant to be specially made or adapted for use in an infringing manner, and are not staple articles with substantial non-infringing uses. The Accused Products are specially designed to

infringe at least one or more claims of the '067 Patent, and their accused components have no substantial non-infringing uses. In particular, on information and belief, the software modules and code that implement and perform the infringing functionalities identified above are specially made and adapted to carry out said functionality and do not have any substantial non-infringing uses.

37. At least as early as the filing and/or service of this Complaint, Defendant's infringement of the '067 Patent was and continues to be willful and deliberate, entitling Heritage to enhanced damages.

38. Additional allegations regarding Defendant's knowledge of the '067 Patent and willful infringement will likely have evidentiary support after a reasonable opportunity for discovery.

39. Defendant's infringement of the '067 Patent is exceptional and entitles Heritage to attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

40. Heritage is in compliance with any applicable marking and/or notice provisions of 35 U.S.C. § 287 with respect to the '067 Patent.

41. Heritage is entitled to recover from Defendant all damages that Heritage has sustained as a result of Defendant's infringement of the '067 Patent, including, without limitation, a reasonable royalty.

## COUNT II: INFRINGEMENT OF U.S. PATENT NO. 7,221,200

42. Heritage incorporates by reference and re-alleges paragraphs 1-41 of this Complaint as if fully set forth herein.

43. Defendant has infringed and is infringing, either literally or under the doctrine of equivalents, the '200 Patent in violation of 35 U.S.C. § 271 *et seq.*, directly and/or indirectly, by

making, using, offering for sale, or selling in the United States, and/or importing into the United States without authority or license, the Accused Product.

44. As just one non-limiting example, set forth below (with claim language in bold and italics) is exemplary evidence of infringement of Claim 1 of the '200 Patent in connection with the Accused Product. This description is based on publicly available information. Heritage reserves the right to modify this description, including, for example, on the basis of information about the Accused Product that it obtains during discovery.

*1(a): A low voltage reset apparatus, comprising:* Defendant makes, uses, sells, and/or offers to sell a device or system having a low voltage reset apparatus in accordance with Claim 1.

For instance, the Accused Product includes a SoC with reset on Brown Out function. *See* Exhibit B-1, Figs. 1-4

*1(b): a programmable reference voltage generator for generating a programmable reference voltage according to a power supply voltage;*—Defendant makes, uses, sells, and/or offers to sell a device or system having a programmable reference voltage generator for generating a programmable reference voltage according to a power supply voltage.

For instance, the low voltage reset apparatus (e.g., the SoC with reset on Brown Out function) utilized by the accused product comprises a programmable reference voltage generator (e.g., a reference voltage generator which generates reference voltages viz. 1.5V, 1.85V, 2V and 3V) for generating a programmable reference voltage (e.g., one of 1.5V, 1.85V, 2V and 3V) according to a power supply voltage (e.g., VCC). *See* Exhibit B-1, Figs. 5-9.

*1(c): a low voltage signal generator coupled to the programmable reference voltage generator, the low voltage signal generator for generating a low voltage signal when the power supply voltage decreases below the programmable reference voltage; and;*—Defendant makes,

11

uses, sells, and/or offers to sell a device or system having a low voltage signal generator coupled to the programmable reference voltage generator, the low voltage signal generator for generating a low voltage signal when the power supply voltage decreases below the programmable reference voltage.

For instance, the low voltage reset apparatus (e.g., the SoC with reset on Brown Out function) utilized by the accused product comprises a low voltage signal generator (e.g., BOR Comparator) coupled to the programmable reference voltage generator, the low voltage signal generator (e.g., BOR Comparator) for generating a low voltage signal (e.g., signal indicating VCC going below BOR_THR in the form of BOR signal) when the power supply voltage (e.g., VCC) decreases below the programmable reference voltage (e.g., one of 1.5V, 1.85V,2V and 3V). *See* Exhibit B-1, Figs. 10-12

*1(d): a reset selector coupled to the low voltage signal generator for selectively passing the low voltage signal as a reset signal in response to a reset selector control signal.;—* Defendant makes, uses, sells, and/or offers to sell a device or system having a reset selector coupled to the low voltage signal generator for selectively passing the low voltage signal as a reset signal in response to a reset selector control signal.

For instance, the low voltage reset apparatus the low voltage reset apparatus (e.g., the SoC with reset on Brown Out function) utilized by the accused product comprises a reset selector (e.g., BOR enabler) coupled to the low voltage signal generator (e.g., BOR comparator) for selectively passing the low voltage signal (e.g., signal indicating VCC going below BOR_THR in the form of BOR signal) as a reset signal (brown-out reset/BOR Signal) in response to a reset selector control signal (e.g., BOR_EN). *See* Exhibit B-1, Figs. 13-16

45. Additionally, Defendant has been and/or currently is an active inducer of

infringement of the '200 Patent under 35 U.S.C. § 271(b) and contributory infringer of the '200 Patent under 35 U.S.C. § 271(c).

46. At least as early as of the date of the filing of the Complaint, Defendants have had actual knowledge of the '200 Patent.

47. Defendant has provided the Accused Products to its customers and, on information and belief, instructions to use the Accused Products in an infringing manner while being on notice of (or willfully blind to) the '200 Patent and Defendant's infringement. Therefore, on information and belief, Defendant knew or should have known of the '200 Patent and of its own infringing acts, or deliberately took steps to avoid learning of those facts.

48. Defendant knowingly and intentionally encourages and aids at least its end-user customers to directly infringe the '200 Patent.

49. Defendant's end-user customers directly infringe at least one or more claims of the '200 Patent by using the Accused Products in their intended manner to infringe. Defendant induces such infringement by providing the Accused Products and instructions to enable and facilitate infringement, knowing of, or being willfully blind to the existence of, the '200 Patent. On information and belief, Defendant specifically intends that its actions will result in infringement of one or more claims of the '200 Patent, or subjectively believe that their actions will result in infringement of the '200 Patent, but took deliberate actions to avoid learning of those facts, as set forth above.

50. Additionally, Defendant contributorily infringes at least one or more claims of the '200 Patent by providing the Accused Products and/or software components thereof, that embody a material part of the claimed inventions of the '200 Patent, that are known by Defendant to be specially made or adapted for use in an infringing manner, and are not staple

articles with substantial non-infringing uses. The Accused Products are specially designed to infringe at least one or more claims of the '200 Patent, and their accused components have no substantial non-infringing uses. In particular, on information and belief, the software modules and code that implement and perform the infringing functionalities identified above are specially made and adapted to carry out said functionality and do not have any substantial non-infringing uses.

51.     At least as early as the filing and/or service of this Complaint, Defendant's infringement of the '200 Patent was and continues to be willful and deliberate, entitling Heritage to enhanced damages.

52.     Additional allegations regarding Defendant's knowledge of the '200 Patent and willful infringement will likely have evidentiary support after a reasonable opportunity for discovery.

53.     Defendant's infringement of the '200 Patent is exceptional and entitles Heritage to attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

54.     Heritage is in compliance with any applicable marking and/or notice provisions of 35 U.S.C. § 287 with respect to the '200 Patent.

55.     Heritage is entitled to recover from Defendant all damages that Heritage has sustained as a result of Defendant's infringement of the '200 Patent, including, without limitation, a reasonable royalty.

**PRAYER FOR RELIEF**

WHEREFORE, Heritage respectfully requests:

   A. That Judgment be entered that Defendant has infringed at least one or more claims of the '200 Patent, directly and/or indirectly, literally and/or under the

doctrine of equivalents;

      B.  An award of damages sufficient to compensate Heritage for Defendant's infringement under 35 U.S.C. § 284, including an enhancement of damages on account of Defendant's willful infringement;

      C.  That the case be found exceptional under 35 U.S.C. § 285 and that Heritage be awarded its reasonable attorneys' fees;

      D.  Costs and expenses in this action;

      E.  An award of prejudgment and post-judgment interest; and

      F.  Such other and further relief as the Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Heritage respectfully demands a trial by jury on all issues triable by jury.

Respectfully submitted,

Dated:  May 29, 2020

                  CHONG LAW FIRM, P.A.

                  /s/ Jimmy Chong
                  Jimmy Chong (#4839)
                  2961 Centerville Road, Suite 350
                  Wilmington, DE 19808
                  Phone: (302) 999-9480
                  Facsimile: (877) 796-4627
                  Email: chong@chonglawfirm.com


                  By: */s/ Hao Ni*
                  Hao Ni (*Pending Pro Hac Vice*)
                  Texas Bar No. 24047205
                  hni@nilawfirm.com
                  Timothy T. Wang
                  Texas Bar No. 24067927
                  twang@nilawfirm.com
                  Neal G. Massand
                  Texas Bar No. 24039038
                  nmassand@nilawfirm.com
                  Stevenson Moore V
                  Texas Bar No. 24076573
                  smoore@nilawfirm.com

 **Ni, Wang & Massand, PLLC**
8140 Walnut Hill Ln., Ste. 500
Dallas, TX 75231
Tel: (972) 331-4600
Fax: (972) 314-0900

*Attorney for Plaintiff*
*Heritage IP LLC*